UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| NETTIE L. BROWN | CIVIL ACTION NO. 13-03290 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF SHREVEPORT | MAG. JUDGE MARK HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #36] filed by Defendant City of Shreveport ("the City"), seeking dismissal of Plaintiff's claims of age discrimination and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, and Louisiana Revised Statutes § 23:312. Plaintiff Nettie L. Brown opposes the motion [Doc. #71]. For the reasons that follow, the City's Motion for Summary Judgment [Doc. #36] is **DENIED**.

## STATEMENT OF THE CASE[1]

In this employment discrimination case, Plaintiff claims that she was passed over for a promotion to the position of Superintendent of Water Purification due to her age, even though she was more qualified for the position than was the successful candidate, Qiana Maple. At the time of the employment decision, Plaintiff was 68 years old, while Qiana Maple was 32. Plaintiff began working for the City in September 1987, as a lab technician at the purification plant, and remains a City employee, in the position of Water Quality Lab Manager.[2] Plaintiff has been in a

---

[1] Facts were largely taken from the City's statement of undisputed facts [Doc. #36-1], to the extent those facts were not controverted by Plaintiff, and from Plaintiff's response to the City's facts [Doc. #71-1].

[2] Doc. #71-2, p. 19, ¶ 4.

1

supervisory role since 1990 and was responsible for hiring Qiana Maple, in August 2004, and later promoting Ms. Maple to Senior Lab Tech.[3]

In January 2012, the City's Department of Water & Sewerage requested that the Department of Human Resources ("HR") advertise a job opening for the position of Superintendent of Water Purification ("Superintendent"), which is an unclassified, at-will position for the City.[4] A person occupying an unclassified position is appointed by the hiring authority and can be terminated at any time for any legal, nondiscriminatory reason. An unclassified position does not require the posting of an advertisement or a competitive selection process, such as interviews, and the relevant decision-making authority can select any person of his or her choosing.

At all times relevant, the Interim Director of the Department of Water & Sewerage ("DWS") was Brian Crawford.[5] Mr. Crawford was the hiring authority for the Superintendent position in 2012; however, as an unclassified position, the hired individual would be considered interim until appointed by the Mayor and approved by the City Council.[6] Mr. Crawford chose to advertise the vacancy and provided the information for the job description and qualifications to

---

[3] *Id.* at p. 20, ¶ 6. It is undisputed that, at the time of the employment decision, Plaintiff had twenty-two (22) years' supervisory experience, while Ms. Maple's supervisory experience remains a disputed fact.

[4] The following titles are used interchangeably: Superintendent of Water Purification, Amiss Water Plant Superintendent, Superintendent of the Amiss Water Purification Plant, and Superintendent of the Thomas Amiss Water Purification Plant.

[5] Prior to serving as Interim Director, Mr. Crawford was Chief of the Shreveport Fire Department.

[6] Doc. #36-4, p. 3, ¶ 10, and p. 5, ¶ 16 (sworn statement of Brian Crawford); *see also* Doc. #36-7, p. 2, ¶ 5, and p. 3, ¶ 11 (sworn statement of Angelita Jackson); Doc. #71-3, p. 43 (city ordinance).

HR to include in the advertisement. HR then posted the advertisement on their website and Neogov.com and also circulated the advertisement to several professional trade publications. The advertisement stated that any interested applicant should submit a resume to Mr. Crawford and, relying on language from the job description, stated that the minimum qualifications included: a bachelor's degree in Environmental Science, Civil Engineering, Chemistry, Microbiology, Business Administration, or other related field; two years experience in the operations and maintenance of a water treatment plant and two years experience of administration and supervisory responsibility; and valid Class IV certifications in Water Treatment, Water Production, and Water Distribution.

In response to the advertisement, some resumes were sent directly to Mr. Crawford, while others were submitted to HR and then forwarded to Mr. Crawford; however, HR did not review any resumes or provide any feedback or comments to Mr. Crawford. Instead, Mr. Crawford was assisted by Barbara Featherston, an Assistant City Engineer whose duties included assisting the DWS. Many of the applicants, based on their resumes, did not meet the minimum application requirements of Class IV certifications or a college degree. Mr. Crawford contacted the remaining applicants and scheduled interviews with Plaintiff, Qiana Maple, Michael Wallette, and Jennifer Hines. Upon Mr. Crawford's request, Ms. Featherston reviewed the remaining applicants' resumes and sent an email to Mr. Crawford with her assessment thereof.[7] Ms. Featherston stated, in pertinent part, that Plaintiff "is very familiar with the plant and has

---

[7] Although Mr. Crawford stated that he interviewed Brown, Maple, Hines, and possibly Wallette, see Doc. # 36-4, p. 2, ¶ 7, Ms. Featherston's email ranked five individuals, in the following descending order: Gordon Garcie, Michael Wallette, Nettie Brown, Qiana Maple, and Jennifer Hines.

supervisory experience in the lab, but not necessarily overall plant experience."[8] Ms. Featherston's email further stated that "[i]t wouldn't hurt to interview Qiana [Maple,]" despite not having "a lot of overall plant knowledge or supervisory experience," because "sometimes when you interview a person, you see something that fits."[9]

The interviews were conducted in February 2012. Although both Mr. Crawford and Ms. Featherston asked questions of the applicants during the interviews, the hiring decision was solely that of Mr. Crawford. At the conclusion of the interviews, Mr. Crawford selected Qiana Maple for the position. During that same time period, Gordon Garcie, who was the Operations and Maintenance Manager of the Water Purification Division of DWS, had been conducting interviews for the position of Chief Supervisor, which is a subordinate position to the Superintendent. Mr. Garcie interviewed ten individuals and, on February 24, 2012, reported to Mr. Crawford that only three of those ten had scored at least an 18 out of 20, according to Mr. Garcie's interview rankings.[10] Qiana Maple was one of those three individuals. Mr. Garcie further advised Mr. Crawford that there had been "no front runners or standout applicants in [his] mind" and suggested that all applicants be rejected and the position re-advertised to allow the new superintendent to be involved in the interview process after March 1, 2012.[11] Thereafter, on February 28, 2012, Mr. Crawford sent an inter-office memorandum to all personnel informing

---

[8] Doc. #71-6, p. 7.

[9] *Id.*

[10] *Id.* at p. 8.

[11] *Id.*

4

them that he had made several hiring decisions regarding key leadership positions within DWS, including promoting Ms. Maple to Superintendent.[12]

On March 12, 2012, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), wherein Plaintiff complained of age discrimination by the City.[13] The City received a copy thereof on May 3, 2012 and responded on May 31, 2012.[14] The EEOC then issued a Letter of Determination, finding reasonable cause to believe that Plaintiff was discriminated against in violation of the ADEA, on August 28, 2013, which was received by the City on September 9, 2013.[15] The City submitted a rebuttal, or request for reconsideration, on September 20, 2013, and the EEOC issued Plaintiff a right to sue letter on September 30, 2013.[16] Thereafter, on March 21, 2014, the EEOC denied the City's previous request for reconsideration, reiterating that the August 28, 2013 determination had been a final determination.[17]

In March 2014, the Office of the City Attorney ("OCA") conducted an investigation regarding a complaint of harassment, filed against Plaintiff by a subordinate of Plaintiff.[18] The

---

[12] Doc. #36-4, p. 5, ¶ 15, and pp. 7-8.

[13] Doc. #71-6, pp. 10-11 and Doc. #36-8, pp. 8-9.

[14] Doc. #36-8, p. 1, ¶ 2.

[15] *Id.* at p. 1, ¶ 3 and pp. 11-12.

[16] *Id.* at p. 2, ¶¶ 4 and 5 and pp. 5-6 and 7.

[17] *Id.* at p. 2, ¶ 6 and p. 4.

[18] Plaintiff purports to deny these facts; however, it is clear from Plaintiff's response that she does not deny that the complaint was filed or that the City's attorneys handled the complaint. Instead, Plaintiff disputes the finding of harassment and argues that the so-called "harassment" was actually "legitimate supervision and discipline imposed by Plaintiff in her supervisory capacity." [Doc. #71-1, p. 8, ¶ 19].

5

OCA investigated the complaint rather than the City's HR, in order to avoid the appearance of a conflict of interest in light of Plaintiff being on the HR Board. An OCA attorney wrote a report, which was submitted to Ms. Featherston, as Director of DWS, substantiating the claim that Plaintiff had created a hostile work environment by harassing a subordinate employee. Upon recommendation by the OCA, on March 26, 2014, a pre-disciplinary conference was held. Ms. Featherston, as the decision authority, imposed a five (5) day suspension without pay, based on a finding that Plaintiff had engaged in misconduct by harassing a subordinate employee. In reaching that decision, Ms. Featherston considered the OCA report, Plaintiff's personnel file, and Plaintiff's statements made during the conference.[19] Plaintiff states that Ms. Featherston lacked a factual basis upon which to impose any such discipline and that, in addition to being wrongfully deprived of five days' compensation, Plaintiff's supervisory authority was undermined.[20]

In April 2014, Plaintiff issued a written reprimand to a subordinate and denied that employee's request to use sick leave. The employee then filed a grievance, which was denied by Plaintiff. In May 2014, the grievance was filed with Ms. Maple, as Plaintiff's supervisor. Ms. Maple upheld the reprimand issued by Plaintiff and directed the subordinate to issue a written apology to Plaintiff; however, Ms. Maple approved the employee's request to use sick leave. Ms. Maple claims that her approval thereof was based on her review of the facts, her determination

---

[19] Doc. #36-5, p. 4, ¶ 14.

[20] Doc. #71-1, p. 9, ¶ 20.

that the leave policy was vague, and made to ensure procedural fairness for the subordinate.[21] Plaintiff states that this action also served to undermine her supervisory authority.[22]

In October 2014, Ms. Maple, as Plaintiff's supervisor, documented a verbal reprimand issued to Plaintiff in response to an incident in which the water purification laboratory, over which Plaintiff is the supervisor, failed to collect and ship certain samples for testing, as required by the Department of Health and Hospitals. Ms. Maple determined that Plaintiff, as the lab supervisor, was ultimately responsible for ensuring that samples were collected and shipped on time. Plaintiff was not prohibited from taking any disciplinary action against any subordinate employees found to be at fault for the incident.[23] Plaintiff states that Ms. Maple was actually at fault in the incident and that Plaintiff was disciplined to cover up the Superintendent's fault and as retaliation for Plaintiff's EEOC complaint.[24] Again, Plaintiff states that the action served to undermine her supervisory authority and that, in twenty years as lab manager, Plaintiff had never been issued a reprimand by a superintendent.

In the instant motion, the City argues, first, that this case should be "returned" to the EEOC, due to the EEOC's failure to act in good faith when it "prematurely and improperly issued a right to sue letter" before responding to the City's rebuttal to, or request for reconsideration of, the EEOC's Letter of Determination.[25] Second, assuming exhaustion of

---

[21] Doc. #36-6, pp. 2-3, ¶ 8.

[22] Doc. #71-1, p. 9, ¶ 21.

[23] Doc. #36-6, p. 3, ¶ 9.

[24] Doc. #71-1, p. 9, ¶ 22.

[25] Doc. #36-2, p. 4.

administrative remedies, the City argues that its hiring decision was based on a legitimate, nondiscriminatory reason, and Plaintiff has failed to show that the City's proffered reasons are false and Plaintiff's age was the true, but-for cause for the City's decision. And, finally, regarding Plaintiff's claims of retaliation, the City argues that: (a) Plaintiff's claim that a five-day suspension in March 2014 was retaliation for her April 2012 EEOC complaint must be dismissed for failure to prove a causal connection between the protected activity and the alleged retaliatory action; and (b) Plaintiff's claims regarding a verbal reprimand in October 2014 and Maple's approval of another employee's sick leave must be dismissed for lack of an adverse personnel action.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that are irrelevant or unnecessary for determination of the suit should not be considered. *Id.* The substantive law will determine which facts are "material." *Id.*

---

[26] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When a defendant moves for summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden in one of two ways: (1) show there is no evidence to support an essential element of the plaintiff's claim, or (2) submit summary judgment evidence that negates one of the essential elements of the plaintiff's claim. *Celotex*, 477 U.S. at 322-24; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The court is to resolve all reasonable doubts about the facts in favor of the plaintiff. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

Plaintiff filed this employment discrimination lawsuit against the City on December 23, 2013, alleging that she was subjected to age discrimination and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, and Louisiana Revised Statutes § 23:312.[27] "Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349-50 (5th Cir. 2005)

---

[27] "The Louisiana Act mirrors the federal ADEA and should be construed in light of federal precedent." *O'Boyle v. Louisiana Tech Univ.*, 32,212 (La. App. 2 Cir. 10/1/99); 741 So. 2d 1289, 1290 (citing *Taylor v. Oakbourne Country Club*, 95-388 (La. App. 3 Cir. 10/04/95); 663 So.2d 379).

9

(quoting 29 U.S.C. § 623(a)(1)); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141 (2000).

The City's first argument concerns a failure to exhaust administrative remedies, based on the EEOC's alleged failure to act in good faith. The City asks that the case be "returned" to the EEOC for further proceedings.[28] Both the Supreme Court and the Fifth Circuit have clearly held that the ADEA "does not condition [an] individual's right to sue upon the [EEOC] taking any action." *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 403–04 (2008) (citation omitted); *Julian v. City of Houston, Tex.,* 314 F.3d 721, 725 (5th Cir. 2002) (holding that, contrary to the requirements of Title VII,[29] the receipt of a right-to-sue notice is not a prerequisite to filing an ADEA action). Under the ADEA, a complainant who timely files an EEOC charge and then observes the proper waiting period applicable to the state in which the case arises, has satisfied the statutory preconditions to filing suit. *Julian,* 314 F.3d at 726.[30] Here, the City does not challenge the timeliness of the suit; rather, the City challenges the propriety or sufficiency of the EEOC's efforts at conciliation.

The ADEA requires that the EEOC, upon receiving a charge of age discrimination, "promptly notify all persons named in such charge as prospective defendants in the action" and

---

[28] It is presumed that the City is requesting a stay of these proceedings, as conciliation is not jurisdictional. *See Agro,* 555 F.3d at 469 ("Holding that conciliation is not jurisdictional . . . [c]ourts remain free to impose a stay for the EEOC to continue prematurely terminated negotiations, and where the EEOC fails to act in good faith, dismissal remains an appropriate sanction.").

[29] Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000(e) *et seq.*

[30] The Court recognizes that 29 U.S.C. § 626(e) provides that, if a case is dismissed or otherwise terminated by the EEOC, any civil action must be brought within 90 days after the date of the receipt of such notice. The relative applicability of that deadline versus the § 626(d) deadline applicable to the *Julian* defendant is not relevant here. *See Julian,* 314 F.3d at 726.

"promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d)(2). The cases cited by the City involve complaints brought by the EEOC against an employer, and in that significant way, the Court agrees with Plaintiff that those cases are distinguishable from the instant suit. Nevertheless, the Court finds that, here, the EEOC did not "prematurely and improperly" issue a right to sue letter. "In evaluating whether the EEOC has adequately fulfilled [the ADEA's] statutory requirement [to attempt conciliation], the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." *EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 107 (5th Cir. 1981) (citing *Marshall v. Sun Oil Company (Delaware)*, 605 F.2d 1331, 1335-36 (5th Cir. 1979) (ADEA case)). The City's argument fails to acknowledge that the City originally received notice of Plaintiff's EEOC complaint on May 3, 2012, responded thereto on May 31, 2012, and received the EEOC's determination on September 9, 2013. The City also fails to acknowledge that the EEOC's determination plainly stated that "[t]his determination is final."[31] That determination letter also directed the City to respond within fourteen (14) days if the City wished to participate in conciliation efforts. Regardless of any delayed receipt of that letter, there is no doubt that the City was on notice, by September 9, 2013, that the EEOC had issued a final determination and that affirmative action by the City was required to initiate further conciliation efforts. The City failed to act in a prompt manner; therefore, the Court will proceed to the merits of Plaintiff's suit.

"In employment discrimination cases, a plaintiff may present [her] case by direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir.

---

[31] Doc. #36-8, p. 12.

2002) (citation omitted). In an ADEA case, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78 (2009) (citing *Reeves*, 530 U.S. at 141–43). Under the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a prima facie case of failure-to-promote requires a plaintiff to show that: (1) she was over forty; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position was filled by someone younger or the failure to promote was due to her age. *Tratree v. BP North American Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998)). "[A]fter the employee demonstrates a prima facie case of discrimination and the employer meets its burden of positing a legitimate, nondiscriminatory reason for the employment action, the burden falls to the employee to establish that the employer's permissible reason is actually a pretext for discrimination." *Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004). "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

A "prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .' In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Flanner v. Chase Inv. Services Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015) (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517

U.S. 308, 312–13 (1996) (alterations in original) (emphasis omitted) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977))). "[A] plaintiff's replacement must be 'substantially younger' to create an inference of discrimination." *Id.* Here, there is no question, and the City does not dispute, that Plaintiff has established a prima facie case. At the time of the relevant decision, Plaintiff was over forty, qualified for the superintendent position yet not promoted, and the successful candidate was younger than Plaintiff. In fact, Plaintiff was more than twice Ms. Maple's age. The burden then shifts to the City to show that the promotional decision was not discriminatory.

The City's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). In support of its decision to promote Ms. Maple over Plaintiff, the City relies on the assessments of Mr. Crawford, as the decision authority, as well as Ms. Featherston, who participated in the interview process and provided Mr. Crawford with verbal assessments of the candidates.[32] "An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.").

---

[32] *See* Doc. #36-5, p. 2, ¶ 7.

Mr. Crawford found Ms. Maple to be the best qualified applicant, as she was "very professional and prepared during her interview."[33] Mr. Crawford believed that Ms. Maple: "took the position of [s]uperintendent very seriously;" "knew the overall responsibilities of the position;" had "a good knowledge of plant operations, including answering questions regarding the supervisory control and data acquisition (SCADA) system used to operate the plant;" and had "good initiative" in seeking out information about plant operations.[34] Ms. Maple also gave concise answers and demonstrated that she possessed the qualities and capabilities to be a successful leader and manager of the purification plant. Mr. Crawford believed that Ms. Maple possessed the requisite supervisory experience and did not rely on input from anyone other than Ms. Featherston.[35] Ms. Featherston recalled Mr. Crawford being very impressed with Ms. Maple and making several positive comments about Ms. Maple, post-interview. She further recalled that Ms. Maple "did very well during her interview[,] . . . demonstrated [that] she had been learning things about water purification outside of the laboratory, particularly with regard to plant operations and the [SCADA] system[,] . . . [and] presented herself well."[36] Ms. Featherston believed that Ms. Maple's answers regarding plant operations were more specific and accurate than those of Plaintiff.

---

[33] Doc. #36-4, p. 3, ¶ 11.

[34] *Id.*

[35] *Id.* at p. 4, ¶ 11.

[36] Doc. #36-5, pp. 2-3, ¶ 9.

14

On the other hand, although Plaintiff had experience in water purification, Mr. Crawford found that her presentation during the interview was not strong.[37] In Mr. Crawford's opinion, Plaintiff was too casual in her conversation, had a slouched, unprofessional appearance, and answered specific questions too generally.[38] Mr. Crawford did not believe that Plaintiff took the interview seriously, but rather "approached the interview as an applicant who believed she already had the job."[39] Neither Mr. Crawford nor Ms. Featherston knew the age of the applicants nor did they ask any questions regarding age during any of the interviews. Mr. Crawford stated unequivocally that he "did not consider age in making [his] decision."[40] Based on the fact-specific assessments of each candidate, and without making any credibility determinations, the Court finds that the City has provided a legitimate, nondiscriminatory basis for its decision.

The burden then shifts back to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (citations omitted). The plaintiff may show pretext "by showing that the employer's proffered explanation is unworthy of credence." *Id.* "In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge." *E.E.O.C. v. Louisiana Office of Community Services*, 47 F.3d 1438, 1443-44 (5th Cir. 1995) (citing *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 562 (5th Cir. 1983)). "Evidence that the proffered

---

[37] Doc. #36-4, p. 4, ¶ 12.

[38] *Id.*

[39] *Id.*

[40] *Id.* at p. 4, ¶ 14.

reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient." *Id.* at 1444 (citation omitted). However, "[a] fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." *Id.* (citations omitted).

At the outset, Plaintiff points out, and the Court acknowledges, that the EEOC did in fact find reasonable cause to believe that Plaintiff was discriminated against, based on age. Although "civil litigation at the district court level clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC[,]" the EEOC's determination is nonetheless "highly probative of the ultimate issue[.]" *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir. 1972). And, this Court must, at the summary judgment stage, view all evidence in the light most favorable to Plaintiff. *See Cooper Tire*, 423 F.3d at 456. Furthermore, at this stage in the analysis, a court "may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual[.]'" *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 10 (1981)).

Plaintiff relies on the requirement of "two years experience of administration and supervisory responsibility" to support the argument that Ms. Maple was not minimally qualified for the position.[41] However, Mr. Crawford explicitly stated that he believed Ms. Maple possessed the requisite experience, and there is nothing in the plain language of the job description that disqualifies Ms. Maple. Nevertheless, Plaintiff has produced sufficient evidence to create a

---

[41] Doc. #71, p. 16.

16

genuine dispute as to the material facts supporting her pretext argument and the relative facts supporting the City's proffered basis for the employment decision. Plaintiff has offered a significantly different account of her interview experience, including the fact that Plaintiff allegedly provided Mr. Crawford with a "plan of work" for the purification plant, rebutting Mr. Crawford's contention that Plaintiff did not take the interview seriously.[42] And, unfortunately, Mr. Crawford's notes, taken contemporaneously with the interview process, are not available. Plaintiff also disputes Ms. Maple's actual supervisory experience, relying on the opinion of the City's HR director, the lack of formal designation of Ms. Maple's former position as a supervisory role with the City, and Plaintiff's personal experience in hiring and supervising Ms. Maple. Indeed, Plaintiff's documented experience far outweighs that of Ms. Maple, who was passed over in the interview process for Chief Supervisor, a subordinate role to Superintendent. In that process, the interviewer Mr. Garcie determined that there were "no front runners," including Ms. Maple. And, finally, Plaintiff has alleged that the City was engaged in a policy favoring millennials,[43] such as Ms. Maple, over "senior professionals," such as Plaintiff, as well as institutional "succession planning." Although the relative weight of the latter categories is certainly not dispositive, at the summary judgment stage, doubts are resolved in Plaintiff's favor.

The disparity in the relative qualifications of Plaintiff and Ms. Maple rises above the level of "merely better qualified" or "as qualified." In finding that genuine disputes of material facts preclude summary judgment, this Court is cognizant that its purpose in "conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire v.*

---

[42] Doc. #71-2, pp. 36-37.

[43] Defined by Meriiam-Webster's Dictionary as "a person born in the 1980s or 1990s."

*Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007) (citations omitted). And, although "an 'attempt to equate years served with superior qualifications . . . [is] unpersuasive[,]'" a "genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified' than" the younger employee who was promoted. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (quoting *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir. 1993)).

And, finally, the City seeks to dismiss Plaintiff's retaliation claims. "To establish a prima facie case of retaliation, a plaintiff must show (1) that [s]he engaged in activity protected by the ADEA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Tratree*, 277 F. App'x at 395 (citing *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *LeMaire*, 480 F.3d at 391 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). Although the Court agrees with the City that Plaintiff's claims of retaliation are relatively weak, the same material facts precluding summary judgment on age discrimination have created enough of a genuine dispute to preclude summary judgment on Plaintiff's retaliation claims. In light of the Court's pretext analysis, coupled with a notable lack of disciplinary or other negative employment incidents in Plaintiff's work history, there are enough disputed facts to allow Plaintiff's case to proceed to a jury trial on the issue of retaliation.

## CONCLUSION

The City was entitled to make its employment decision "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action [was] not for a

discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citing *Megill v. Board of Regents of State of Florida*, 541 F.2d 1073 (5th Cir. 1976)). This Court is not satisfied that the prohibited category, discrimination, has been eliminated. For the foregoing reasons, the City's Motion for Summary Judgment [Doc. #36] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 23 day of November, 2015.

*/s/ Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE